## UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## FLORENCE DIVISION

| | |
|---|---|
| **Johnnie G. Bryant, Jr.,** | Civil Action No. _____ |
| **Plaintiff,** | |
| | **COMPLAINT** |
| v. | |
| | **JURY TRIAL** |
| **TransUnion, LLC,** | **DEMANDED** |
| **Defendant.** | |

## **COMPLAINT**

1. This is an action brought by Plaintiff, Johnnie G. Bryant, Jr., for actual, statutory, and punitive damages, attorneys' fees, and costs for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq, (hereinafter "FCRA").

2. The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3. The FCRA likewise demands that consumers' disputes of inaccurate information be taken seriously by the consumer reporting agencies, requiring that they do much more than simply pass information between themselves and furnishers of information electronically without actually investigating the substance of a consumer's dispute, and consider all information available in conducting such investigations.

4. Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec.

1

2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

5.      To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including §§ 1681c and 1681e, which are two of the cornerstone provisions of the FCRA.

6.      One of the primary purposes of the FCRA is to assure "maximum possible accuracy" of consumer information to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

## JURISDICTION AND VENUE

7.      This Court has Jurisdiction under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681p, and 28 U.S.C. §1331 and §1332.

8.      Venue is proper in the Florence Division because the Plaintiff resides in Marion County and the Defendant transacted business in this division.

## PARTIES

9.      Plaintiff, Johnnie G. Bryant, Jr., is a resident and citizen of the State of South Carolina, Marion County, and is over the age of twenty-one (21) years. Plaintiff is a consumer as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

10.     Defendant TransUnion, LLC, ("TransUnion") is a limited liability company

2

registered to do business in South Carolina with the South Carolina Secretary of State. Defendant may be served with process through its registered agent for service of process, The Prentice-Hall Corporation System, Inc., 508 Meeting Street, West Columbia, South Carolina 29169.  At all times and in all respects relevant herein, Defendant was doing business in the state of South Carolina and in this division.

11.     Defendant TransUnion is a credit reporting agency ("CRA") as defined by the Fair Credit Reporting Act, 15 U.S.C. §1681a.  Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties.

12.     Defendant disburses such consumer reports to third parties under contract for monetary compensation.

13.     Defendant's acts and omissions alleged herein are in violation of the Fair Credit Reporting Act which requires Defendant to provide a consumer with a complete copy of their credit file upon request, to follow reasonable procedures to assure maximum possible accuracy of the information concerning the Plaintiff's credit file, and which requires Defendant to conduct a reasonable reinvestigation of disputed information received from the Plaintiff.

14.     The Plaintiff alleges that Defendant repeatedly failed to delete and suppress erroneous, false, misleading, or inaccurate information from the Plaintiff's TransUnion credit file, and failed to reinvestigate Plaintiff's disputes.  Defendant also repeatedly disseminated Plaintiff's inaccurate credit file to third parties, causing Plaintiff to suffer damages as set forth herein.

## FACTUAL ALLEGATIONS

15.   On or about February 7, 2023, Synchrony Bank sent Plaintiff correspondence indicating that it was lowering Plaintiff's credit limit due to certain factors, including "delinquent or derogatory accounts" and "unpaid collections."

16.   Plaintiff did not have any accounts that were delinquent or unpaid. In order to determine what information was appearing on his credit file, Plaintiff requested a copy of his TransUnion credit report online.

17.   On or about March 2, 2023, Plaintiff also requested a copy of his TransUnion credit report by way of telephone.

18.   On or about March 2, 2023 and March 8, 2023, Plaintiff received copies of his TransUnion credit reports. Both TransUnion credit reports contained two adverse accounts: a Capital One account with account number beginning 5178 ("Capital One Account") and an I C Systems collections account with account number beginning 10442 ("I C Systems Account"). The Capital One Account was reporting as opened in April 2022, and charged off in August 2022, with a balance of $3,319.00. The I C Systems Account was reporting it was originally an AT&T account which had been placed in collections with an unpaid balance of $623.00.

19.   Plaintiff did not apply for, receive, use, or authorize for use, the Capital One Account. Plaintiff did not apply for, receive, use, or authorize for use, the AT&T account which had been placed for collection and was reporting on his TransUnion credit report as the I C Systems Account.

20.   On or about March 31, 2023, Plaintiff sent a dispute letter to TransUnion via

certified mail.  In his letter, Plaintiff specifically informed Defendant that he had been the victim of severe identity theft in the past and that there was a credit freeze on his file ("First Dispute").  In his First Dispute, Plaintiff provided his full social security number, date of birth, and address.  Plaintiff disputed the reporting of the Capital One Account and the I C Systems Account as both having been fraudulently opened.  Plaintiff disputed the reporting of all telephone numbers other than the one ending 3575, and disputed the reporting of a 2511 Ridge St., North Myrtle Beach, SC 29582 address as said address belonged to his son, Johnnie Brandon Bryant. Plaintiff also requested that all inquiries by Creditwise, Capital One, and any insurance reviews be stopped as Plaintiff had not, and was not, requesting credit from these entities.  Plaintiff stated that he would provide any other information TransUnion needed in order to have this information removed.

21.    TransUnion received Plaintiff's letter on April 3, 2023.

22.    On or about April 12, 2023, Plaintiff received the results of TransUnion's alleged reinvestigation.  The I C Systems Account was deleted.  However, the Capital One Bank account was verified as accurate and thus continued to appear on Plaintiff's TransUnion credit report.

23.    Plaintiff also received a copy of his updated TransUnion credit report dated April 12, 2023.  This report showed that the Capital One account was continuing to be reported as belonging to Plaintiff.  Additionally, a Credit One Bank Account with account number 4447 ("Credit One Bank Account") was now appearing on Plaintiff's credit report as a charged off account.  Finally the account reviews by Credit Wise and Capital One continued to wrongfully appear on Plaintiff's credit report.

5

24. On or about April 24, 2023, Plaintiff sent a second written dispute letter to Defendant in which he specifically stated that, based on the information provided to him by Defendant, there were still several fraudulent accounts appearing on his TransUnion credit report. ("Second Dispute"). Plaintiff specifically disputed the Capital One Bank and the Credit One Bank Accounts as fraudulently opened without his knowledge or permission. Plaintiff also continued to dispute all inquiries made by Creditwise and Capital One, as well as all insurance reviews appearing on his TransUnion credit report.

25. Defendant received Plaintiff's Second Dispute on April 27, 2023.

26. On or about May 1, 2023, Plaintiff received a letter from TransUnion in which Defendant stated that it would not investigate Plaintiff's dispute of the Capital One Account as said account had been previously investigated and Capital One had verified the information.

27. On or about May 5, 2023, Plaintiff received the results of Defendant's alleged reinvestigation into his dispute of the Credit One Bank Account, which indicated that the Credit One Bank Account had been deleted.

28. Plaintiff also received a copy of his updated TransUnion credit report dated May 5, 2023. This report showed the Capital One Bank Account continued to be reported as a charged off account belonging to Plaintiff. Additionally, the account reviews continued to evidence that Defendant was allowing Capital One, and others, to view Plaintiff's TransUnion credit report despite his credit freeze.

29. On or about May 19, 2023, Plaintiff sent a third dispute to Defendant in which he specifically informed Defendant that he had been the victim of identity theft and that the

Capital One Account had been fraudulently opened using a Myrtle Beach address that did not belong to Plaintiff. ("Third Dispute"). Plaintiff stated that the continued reporting of the Capital One Account on his credit was "very upsetting" and again requested that Defendant remove the account. Plaintiff again reiterated that he had a credit freeze on his credit file and requested that Defendant stop allowing Creditwise, Capital One, as well as all insurance reviews, to view his credit.

30.   Defendant received Plaintiff's dispute on June 3, 2023.

31.   On or about June 5, 2023, Plaintiff was denied credit by Ally Bank, which was related to Plaintiff's attempt to purchase a 2021 Nissan Frontier truck. Plaintiff was denied credit based on information, in whole or in part, from his TransUnion credit report.

32.   On or about June 9, 2023, Plaintiff received the results of Defendant's alleged reinvestigation into Plaintiff's third dispute. Defendant stated the Capital One Account had been verified as accurate and updated. Accordingly, the Capital One Account continued to be reported on Plaintiff's TransUnion credit report.

33.   To date, Defendant continues to incorrectly report the fraudulent Capital One Account as belonging to Plaintiff. Additionally, Defendant has failed and/or refused to honor Plaintiff's credit freeze.

34.   Defendant failed to make a reasonable investigation into Plaintiff's disputes.

35.   Upon receipt of the ACDV responses, Defendant simply accepted the furnishers' verifications of the Accounts and did not undertake to perform any investigation of its own.

36.   For over 35 years, courts have recognized that a CRA cannot rely upon its data furnishers exclusively, when the consumer disputes the accuracy of the furnishers'

7

information. The CRA must make some independent investigation of its own. "Merely reporting whatever information the creditor furnished was not reasonable, especially where the defendant knew of the impending dispute between the [consumer] and [furnisher]." *Swoager v. Credit Bureau of Greater St. Petersburg,* 608 F.Supp. 972 (M.D. Fla. 1985); *see also Bailey v. TransUnion Credit Info. Servs.,* 2016 U.S. Dist. LEXIS 196516, 2016 WL 11540113 (N.D. Ga. Nov. 28, 2016); *Crane v. TransUnion*, 282 F.Supp. 2d 311 (E.D. Pa. 2003) (explaining that a CRA must "go beyond the original source" to satisfy its duties to investigate).

37. If the CRA knows or should know that the furnisher is unreliable, then a "reasonable reinvestigation" may require verifying the accuracy of the furnisher's information directly. The "grave responsibility" imposed by §1681i(a) must consist of something more than merely parroting information received from other sources. *Cushman v. TransUnion Corp.,* 115 F.3d 220, 225 (3d Cir. 1997).

38. Defendant's knowing and repeated conduct warrants an award of punitive damages. *See, e.g., Younger v. Experian Info. Sols. Inc.,* Case No. 2:15-cv-00952-SGC, at *30 (N.D. Ala. Mar. 21, 2019) (awarding punitive damages for repeated, willful violations of the FCRA).

## COUNT ONE
(Fair Credit Reporting Act)

39. The Plaintiff adopts, to the extent same are consistent with the allegations contained herein, the averments and allegations of paragraphs 15 through 38 hereinbefore as if fully set forth herein.

40. Defendant maintains and distributes credit data files on the Plaintiff's credit. Defendant negligently failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 *et seq.*, including but not limited to: (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b) and (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i.

41. Defendant repeatedly failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

42. As a result of Defendant's negligent violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, denial of credit, increased cost of credit and/or insurance, anxiety, worry, fear, loss of sleep, headaches, loss of enjoyment of life, physical pain and sickness, frustration, humiliation, embarrassment and mental anguish. Additionally, the damage to Plaintiff's credit score precluded him from seeking further credit opportunities and also caused him to not receive promotional offers of credit. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

43. In addition, the Plaintiff has incurred litigation expenses and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

44. Plaintiff is entitled to his attorneys' fees, pursuant to 15 U.S.C. §1681n(a).

## COUNT TWO
(Fair Credit Reporting Act)

45. The Plaintiff adopts, to the extent same are consistent with the allegations contained

herein, the averments and allegations of paragraphs 15 through 44 hereinbefore as if fully set forth herein.

46. Defendant willfully failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to: (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b) and (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i.

47. Defendant willfully failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

48. Due to Defendant's willful failure to comply with the requirements of the Fair Credit Reporting Act, Plaintiff is entitled to statutory damages.

49. As a result of Defendant's willful violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, denial of credit, increased cost of credit and/or insurance, anxiety, worry, fear, loss of sleep, headaches, loss of enjoyment of life, physical pain and sickness, frustration, humiliation, embarrassment and mental anguish. Additionally, the damage to Plaintiff's credit precluded him from seeking further credit opportunities and also caused him to not receive promotional offers of credit. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

50. Further, Defendant's acts and omissions were willful and demonstrate a reckless disregard for the Plaintiff's rights. Therefore, Defendant is liable to the Plaintiff for punitive damages in an amount to be determined by the jury.

51. In addition, the Plaintiff has incurred litigation expenses, and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

52. Plaintiff is entitled to his attorneys' fees, pursuant to 15 U.S.C. §1681o(a)(2).

## AMOUNT OF DAMAGES DEMANDED

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against Defendant for the following:

A. Actual and statutory damages from Defendant pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1);

B. Punitive damages from Defendant pursuant to 15 U.S.C. §1681n(a)(2);

C. Costs and reasonable attorney's fees from Defendant pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and

D. For such other and further relief as the Court may deem just and proper.

*/s/ Penny Hays Cauley*
Penny Hays Cauley, Fed. ID No. 10323
Attorney for Plaintiff

**OF COUNSEL:**
HAYS CAULEY, P.C.
1303 West Evans Street
Florence, SC 29501
(843) 665-1717
(843) 665-1718 Facsimile
phc917@hayscauley.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

*/s/ Penny Hays Cauley*
Of Counsel

**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL:**
TransUnion, LLC
c/o The Prentice-Hall Corporation System, Inc.
508 Meeting Street
West Columbia, South Carolina 29169